UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL GEDEON,      )
    Plaintiff            )
                     )       16-cv-30058-MGM
v.                   )
                     )
LISA DESOUSA,        )
    Defendant.           )

REPORT AND RECOMMENDATION REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 13)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

On or around May 3, 2012, the City of Springfield filed an emergency motion in the Hampden County Housing Court ("Housing Court") for access to property located at 155-157 Oak Grove Avenue owned by plaintiff Michael Gedeon ("Plaintiff" or "Gedeon") and Andrea Gedeon. The City was represented in the underlying code enforcement action by attorney Lisa DeSousa ("Defendant" or "DeSousa"). Following a series of hearings in the Housing Court, certain details of which are set forth below, the Housing Court appointed a receiver to remedy conditions on the property. A successor receiver ultimately was appointed and authorized by the Housing Court to record a lien in excess of $138,000 against the property. Plaintiff, who is self-represented,[1] has filed two law suits in this court based on these events. The sole defendant in this law suit is DeSousa. Plaintiff alleges that DeSousa defamed him in the course of the proceedings in the Housing Court and brings claims of invasion of privacy (Count I) and abuse

---

[1] Pursuant to an order entered on May 5, 2016, Plaintiff is proceeding *in forma pauperis* in this action (Dkt. No. 9). In making its recommendation on Defendant's motion to dismiss, the court has taken into consideration its obligation to screen such cases pursuant to 28 U.S.C. § 1915A at the earliest practicable point in time.

of process (Count III) (Dkt. No. 1 at 7-8).² On August 8, 2016, Defendant's Motion to Dismiss ("Defendant's Motion") was referred to this court for report and recommendation (Dkt. No. 20). After Plaintiff was granted an extension of time to file his opposition to Defendant's Motion, the court heard oral argument on the motion on November 10, 2016 and took it under advisement at the conclusion of the hearing (Dkt. No. 28). For the reasons set forth below, the court recommends that Defendant's Motion be GRANTED for lack of subject-matter jurisdiction and that Plaintiff's claims be dismissed without prejudice. In the alternative, if the court concludes that subject-matter jurisdiction exists, the court recommends that Defendant's Motion be GRANTED and that Plaintiff's claims be dismissed with prejudice because DeSousa is shielded from Plaintiff's claims for damages by absolute immunity.

II. RELEVANT BACKGROUND³

---

² Count II fails to allege any cause of action (Dkt. No. 1 at 7). Construing Plaintiff's complaint liberally, the court assumes that Plaintiff intended to assert a claim of slander or defamation against DeSousa in Count II. *See, e.g., Lefebvre v. Comm'r of Internal Revenue*, 830 F.2d 417, 419 (1st Cir. 1987) (pleadings of self-represented litigant are viewed less stringently than pleadings prepared by counsel). On or around September 16, 2016, Plaintiff filed a document in this case captioned "Plaintiff's Complaint" (Dkt. No. 22-1 at 14-15). This document purports to assert claims of assault, trespass to chattels, malicious abuse of process, and negligent and intentional infliction of emotional distress. Plaintiff never moved for leave to file an amended complaint and no such leave was granted. A self-represented party like Plaintiff is nonetheless obligated to comply with the court's procedural rules. *See, e.g., Lefebvre*, 830 F.3d at 19 (party who elects to proceed *pro se* must comply with all applicable procedural and substantive rules). Accordingly, the court treats the complaint Plaintiff filed to initiate this case as the operative complaint. Even if, however, the court considered the document appearing at docket number 22-1, pages 14-15, as the operative complaint, the court's recommendation would not change.

³ The facts stated herein are drawn from Plaintiff's complaint (Dkt. No. 1) and from Housing Court records filed by the City of Springfield in the companion case filed by Plaintiff, which has been assigned Docket Number 16-cv-30054. Copies of these Housing Court records are attached hereto as Appendix 1. *See, e.g., Xiao Wei Yang Catering Linkage in Inner Mongolia Co., LTD v. Inner Mongolia Xiao Wei Yang USA, Inc.*, 150 F. Supp. 3d 71, 76 (D. Mass. 2015) (a court considering a motion to dismiss properly may consider facts and documents that are official public records, including court records) (citing *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2015)); *see also Buba v. Deutsche Bank Nat'l Tr. Co. Ams.*, Civil Action No. 16-10421-PBS, 2016 WL 2626861, at *3 (D. Mass. May 6, 2016) (citing *Giragosian*

On or around April 27, 2012, the Housing Court issued an emergency administrative search warrant with respect to property at 155-157 Oak Grove Avenue belonging to Plaintiff and Andrea Gedeon (Appendix 1 at 3). Several days later, a Springfield housing inspector executed the administrative warrant. On the basis of his inspection, he recommended immediate condemnation of the property based on fire hazards, the condition of the building, and debris on the property (*id.*). On May 2, 2012, the housing inspector posted the dwelling with a notice of condemnation and an order to vacate (*id.* at 4). On May 3, 2012, the Housing Court held an emergency hearing on the City's motion for access 155-157 Oak Grove Avenue to remove kerosene tanks from the basement. Plaintiff was present with counsel. The court allowed the City's motion to remove the tanks (or have Plaintiff remove them if he timely contracted with an entity properly licensed to do so) (*id.* at 1). Between May 25, 2012 and April 9, 2013, Plaintiff, who continued to be represented by counsel, entered into a series of agreements with the Housing Court to remedy the hazardous and blighted condition of the property. The City repeatedly re-inspected the property (when allowed access by Gedeon) and found that the hazardous and blighted condition of the property had not been remediated (*id.* at 4-6). Following a March 26, 2013 hearing, at which Gedeon was present with counsel and testified, the Housing Court found that the current state of the property rendered it unsafe for emergency personnel to enter, and that it was a fire risk and a blight on the neighborhood (*id.* at 6). In its April 9, 2013 Order, the Housing Court appointed MJA Business Enterprises, Inc. ("MJA") as receiver. Gedeon was given one week to remove any items from the property that he did not want

---

*v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008)) (matters of public record that a court may rely on in ruling on a motion to dismiss include documents from prior state court adjudications).

discarded,[4] after which the receiver was authorized to discard or sell items left on the property (*id.* at 7-15). Following a May 12, 2015 hearing, Campagnari Construction, LLC ("Campagnari") was appointed as a successor receiver with all of the duties and powers previously granted to MJA, MJA was discharged as a receiver, and the court ordered that Campagnari's lien would be superior to any lien of MJA (*id.* at 21). On March 18, 2016, after an evidentiary hearing, the Housing Court approved Campagnari's lien in the amount of $138,531.50, which lien was recorded against the property, by authority of the Housing Court, in the Hampden County Registry of Deeds (*id.* at 26-28).

Plaintiff alleges that DeSousa filed an affidavit in the Housing Court proceedings making false statements in support of the City's motion for appointment of a receiver for 155-157 Oak Grove Avenue when the property did not need a receiver (Dkt. No. 1 at 2), and that DeSousa failed to inform the Housing Court that Gedeon had an agreement with the City for a date by which he was going to complete repairing the siding on the house (*id.*). He further alleges that DeSousa defamed him throughout the code enforcement proceedings related to his property by misrepresentations about the condition of property, and that DeSousa moved for appointment of a receiver in retaliation after his lawyer sent DeSousa a February 14, 2013 notice for a February 27, 2013 deposition of one Rudolph Williams in a code enforcement proceeding related to a different property in Springfield also owned by Gedeon (*id.* at 3; Dkt. No. 22 at 8). Plaintiff confirmed at the hearing on Defendant's Motion that the Housing Court proceedings relative to 155-157 Oak Grove Avenue form the entire basis of his claims against DeSousa. As relief, he

---

[4] The time for Gedeon to remove items from 155-157 Oak Grove Avenue was subsequently extended (Dkt. No. 19-2 at 17).

seeks compensatory and punitive damages in an amount to be determined by a jury, along with attorney's fees and costs (Dkt. No. 1 at 8).

   III.   ANALYSIS

Defendant has moved to dismiss Plaintiff's claims on the grounds that (1) Plaintiff has failed to allege a jurisdictional basis to bring his claims in this court because there is no diversity between the parties and the complaint fails to state a cognizable federal claim; and (2) DeSousa, because she was acting as a municipal attorney prosecuting an administrative proceeding on behalf of the City of Springfield in the underlying action, is shielded by absolute immunity from Plaintiff's claims (Dkt. No. 14 at 4-5). Each of these contentions has merit, and supports dismissal of all claims in this case. As it is required to do, the court turns first to the question of subject-matter jurisdiction. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.").

   1. Subject-Matter Jurisdiction

      a. Standard of review

A motion to dismiss based on lack of subject matter jurisdiction is properly brought under Federal Rule of Civil Procedure 12(b)(1), which is "a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001). When, as in this case, the defendant mounts a challenge to diversity jurisdiction, there are two formats for such a challenge. "The first way is to mount a challenge which accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." *Id.* at 363 (citing *Ohio Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d

507, 511 (5th Cir. 1980). For purposes of this task, a court credits a plaintiff's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor, but may augment the facts alleged in the complaint by considering the contents of explanatory affidavits or another source of uncontested facts. *See id.*

The second kind of challenge to subject-matter jurisdiction based on diversity involves contesting the accuracy of the jurisdictional facts asserted by the plaintiff, and proffering material of an evidentiary quality to support the challenge. This "'factual challenge' – permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Id.* Keeping in mind its obligation to read Plaintiff's complaint generously, *see, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court addresses first whether the basis for subject-matter jurisdiction asserted by Plaintiff passes muster as a matter of fact, and concluding that it does not, considers briefly whether a basis for federal question jurisdiction appears as sufficiently alleged in the complaint.

    i.    <u>Diversity jurisdiction</u>

Plaintiff asserts that this court has jurisdiction based on diversity of citizenship and an amount in controversy that exceeds $75,000 (Dkt. No. 1 at 4). "Federal jurisdiction based on diversity requires that the matter in controversy be between citizens of different states." *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008) (citing 28 U.S.C. § 1332(a)(1)). Plaintiff states that he is domiciled in Springfield, Massachusetts (Dkt. No. 1 at 1). He has failed to identify DeSousa's domicile, but he avers that her place of business is also in Springfield, Massachusetts (*id.*). DeSousa has submitted an affidavit – which is by definition material of evidentiary quality – in which she states that she not only works, but also resides, in Springfield,

Massachusetts (Dkt. No. 14-1 at 1). "For purposes of diversity, a person is a citizen of the state in which he is domiciled." *Padilla-Mangual*, 516 F.3d at 31. "[T]he mode of proving diversity is normally left to the district court . . . [which] may rely on documentary evidence to establish whether jurisdiction attaches[.]" *Id.* at 33. "Once challenged, 'the party invoking subject matter jurisdiction [here, [Gedeon]] has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction.'" *Id.* at 31 (quoting *Bank One, Texas N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992)). Plaintiff has supplied the court with no evidence contradicting DeSousa's representation that she is domiciled in Massachusetts, which representation is consistent with the complaint, in which Plaintiff acknowledges that DeSousa is employed as an attorney by the City of Springfield. The court finds, based on DeSousa's uncontested affidavit, that she is domiciled in Massachusetts, and concludes that Plaintiff has failed to make a sufficient evidentiary showing of diversity as a basis for this court's subject matter jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

    ii.    <u>Federal Question Jurisdiction</u>

Because the only causes of action stated in Plaintiff's complaint are based on state law (and this is remains the case even if the court takes into account the second complaint Plaintiff filed without seeking leave to do so), Plaintiff also has failed to plead a basis for federal question jurisdiction. *See R.I. Fisherman's Alliance, Inc. v. R.I. Dep't of Envtl. Mgmt.*, 585 F.3d 42, 48 (1st Cir. 2009) (as a general rule, federal question jurisdiction exists when a plaintiff pleads a cause of action based on the United States Constitution or a federal statute).

It is true that in Count 3, Plaintiff alleges that Defendant "maliciously abused process in conspiring to have the Plaintiff be put out of his home and making him homeless with malicious intentions of process deprived the plaintiff of his right to due process" (sic), and, in his prayer for relief, includes a reference to 42 U.S.C. §1983 (Dkt. No. 1 at 7-8). The Fourteenth Amendment

7

of the United States Constitution protects an individual's due process rights against infringement by state actors such as DeSousa. A claim alleging a deprivation of a Fourteenth Amendment right to due process is properly asserted under the aegis of § 1983 and such a claim could provide a basis for federal question jurisdiction. *See, e.g., Jarvis v. Village Gun Shop*, 53 F. Supp. 3d 426, 431 (D. Mass. 2014). But, "[f]ederal jurisdiction cannot be conjured up by passing mention of some federal subject," *R.I. Fisherman's Alliance, Inc.*, at 50, and nothing more is present in the complaint.

The passing reference to due process appears in Count 3 of the complaint, which states a claim of abuse of process. The elements of abuse of process under Massachusetts law are: (1) the use of legal process; (2) for an illegitimate purpose; (3) resulting in damages. *See Gouin v. Gouin*, 249 F. Supp. 2d 62, 70 (D. Mass. 2003). If, as Plaintiff claims, DeSousa sought appointment of a receiver for the property at 155-157 Oak Grove Avenue in retaliation because Plaintiff served a deposition notice in an unrelated case, Plaintiff has stated a colorable claim for abuse of process. Where state law provides an adequate remedy for an alleged harm, "a procedural due process claim may not be redressed under section 1983." *Reid v. State of N.H.*, 56 F.3d 332, 341 (1st Cir. 1995).

In any event, Plaintiff has not plausibly alleged a denial of due process. *See Iqbal*, 556 U.S. at 678 (plaintiff bears the burden of plausibly alleging a viable cause of action). The complaint cannot be construed to allege a denial of procedural due process when it alleges *repeated* hearings in the Housing Court prior to the deprivation of property of which Plaintiff complains. *See, e.g., Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998) (due process generally requires notice and an opportunity to be heard prior to a final deprivation of property). Nor, in view of the contents of the records of the Housing Court proceeding attached hereto as

Appendix 1, can the complaint be read to allege a substantive due process violation. *See Katz v. McVeigh*, 931 F. Supp. 2d 311, 320 (D.N.H. 2013) (Notwithstanding the court's obligation to credit properly pled allegations at the motion to dismiss stage, "[t]o the extent [a plaintiff's] allegations of what happened in [prior state court] proceedings are at odds with the records, the court is not required to accept the [plaintiff's] version."). "On a basic level, substantive due process protects the individual against 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *S. Commons Condominium Ass'n v. City of Springfield*, 967 F. Supp. 2d 457, 468 (D. Mass. 2013), *aff'd*, 775 F.3d 82 (1st Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Remediation of dangerous and blighted property is a legitimate governmental objective.

Fairly read, plaintiff's complaint identifies diversity as the basis of subject-matter jurisdiction and alleges only state law causes of action. Because Plaintiff has not satisfied his burden of establishing that this court has subject matter jurisdiction over his claims against DeSousa, the court recommends that those claims be dismissed without prejudice to their being refiled in state court. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 736 (1st Cir. 2016) ("[A] dismissal for lack of subject matter jurisdiction normally operates without prejudice.").

2. DeSousa is Shielded from Plaintiff's Claims by Absolute Immunity

If the court reads Plaintiff's complaint as sufficient to assert a federal due process claim and declines to adopt the recommendation that Plaintiff's claims against DeSousa be dismissed without prejudice for lack of subject matter jurisdiction, then the court recommends that the claims be dismissed with prejudice on the basis that DeSousa is shielded by absolute immunity from Plaintiff's claims for damages.

"Claims of absolute immunity must be 'resolved at the earliest possible stage of litigation.'" *SBT Holdings, LLC v. Town of Westminster*, 541 F. Supp. 2d 405, 414 (D. Mass.), *rev'd on other grounds*, 547 F.3d 28 (1st Cir. 2008). "Officials claiming absolute immunity, like the state official[] here, bear the burden of proving their actions warrant that protection." *Knowlton v. Shaw*, 704 F.3d 1, 6 (1st Cir. 2013). Only a narrow class of governmental officials enjoys absolute immunity from suit. *See SBT Holdings, LLC*, 541 F. Supp. 2d at 414. In the circumstances in which such absolute immunity applies, it provides a complete bar to any claims for damages, whether or not the official has engaged in misconduct. *See id.; see also Knowlton*, 704 F.3d at 5-9; *Dinsdale v. Commonwealth*, 675 N.E.2d 374, 377-78 (Mass. 1997) (government attorneys conducting civil litigation are entitled to absolute immunity against claims for damages asserted on the basis of § 1983 and under state law). The reasons for this absolute immunity are readily apparent.

> An agency official's decision to initiate administrative proceedings 'aimed at legal sanctions,' *Wang v. New Hampshire Bd. of Registration in Med.*, 55 F.3d 698, 701 (1st Cir. 1995), is discretionary, 'very much like [a] prosecutor's decision to initiate or move forward with a criminal prosecution' and is, therefore, entitled to absolute immunity. *Butz* [*v. Economou*, 438 U.S. 478,] 515 [(1978)], *see Wang*, 55 F.3d at 701 (finding that state medical board counsel involved in disciplinary proceedings before state medical licensing board were entitled to absolute immunity). Absolute immunity 'insulate[s] the decisionmaking process from the harassment of prospective litigation.' *Westfall v. Erwin*, 484 U.S. 292, 295 . . . (1988), *superseded by statute on other grounds*, Pub.L. No. 100-694, 102 Stat. 4563 (1988), codified at 28 U.S.C. § 2679(d). Such harassment 'would cause a deflection' of an official's energies from carrying out his official duties, and 'the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.' *Imbler* [*v. Pachtman*, 424 U.S. 409,] 423 [(1976)]. In this way, absolute immunity promotes 'effective government,' where officials are 'freed of the costs of vexatious and often frivolous damages suits.' *Westfall*, 484 U.S. at 295 . . ., that may result from their decisions.

*Knowlton*, 704 F.3d at 6-7 (alterations in original); *see also Dinsdale*, 675 N.E.2d at 377 (absolute immunity warranted because conducting civil litigation on behalf of the government

10

poses obvious risks of entangling such attorneys in vexatious and burdensome litigation brought by disgruntled litigants).

At all relevant times, DeSousa was employed by Springfield as an attorney with responsibility for initiating and prosecuting code enforcement proceedings in the Housing Court (Dkt. No. 1; Dkt. No. 14-1). She was a "government attorney[] employed *directly* by a municipal government in connection with civil proceedings prosecuted on behalf of a municipal government." *SBT Holdings, LLC*, 541 F. Supp. 2d at 414 (emphasis in original) (observing that plaintiffs did not dispute that attorney employed directly by municipality and conducting civil litigation on its behalf was shielded by absolute immunity). The complaint alleges, and Plaintiff confirmed in court, that his claims against DeSousa are based exclusively on her statements and actions in a civil code enforcement proceeding filed in the Housing Court on behalf of DeSousa's municipal employer. The Supreme Court has said, of proceedings similar to the proceeding involving Plaintiff and DeSousa, that "controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. . . . Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz*, 438 U.S. at 512. As an advocate employed by and representing Springfield in proceedings in the Housing Court, DeSousa is entitled to absolute immunity from a suit for damages based on her statements and actions in those proceedings. *See id.; see also SBT Holdings, LLC*, 541 F. Supp. 2d at 415-16; *Dinsdale*, 675 N.E.2d at 377-79 (absolute immunity for civil litigators representing the government is co-extensive under federal and state law). Because DeSousa is absolutely immune from Plaintiff's claims for damages, if this court has subject-matter jurisdiction in the instant case, then DeSousa is entitled to dismissal

with prejudice of the claims brought against her in the instant action. *See SBT Holdings, LLC*, 541 F. Supp. 2d at 416.

IV. CONCLUSION

The court recommends that Plaintiff's complaint be dismissed without prejudice for lack of subject matter jurisdiction. If, however, the court concludes, reading the complaint generously, that Plaintiff has adequately alleged a basis for subject-matter jurisdiction, then the court recommends that Plaintiff's claims against DeSousa be dismissed with prejudice on the basis of absolute immunity.[5]

Dated: February 16, 2017                    /s/ Katherine Robertson
                                            KATHERINE ROBERTSON
                                            UNITED STATES MAGISTRATE JUDGE

---

[5] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-155 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.